JOSEPH E. PALMER & another *vs.* EDNA G. WADSWORTH.

Suffolk.    March 30, 1928. — May 28, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Practice, Civil,* New trial, Requests, rulings and instructions. *Broker,* Commission. *Fraud, Statute of.*

In the absence of an abuse of discretion on the part of a judge who, upon affidavits filed by both parties, heard a motion for a new trial of an action tried before him based on alleged newly discovered evidence, a denial of the motion will not be reversed.

At the trial of an action by a real estate broker for a commission, there was evidence that, at the request of the defendant, the plaintiff procured a prospective purchaser who was ready, able and willing to pay for the property a price named by the defendant and made a deposit on account of the purchase price; that it then was brought to the attention of the plaintiff for the first time that the defendant did not own the property and that it was held by.a trustee under a trust of which the defendant was a beneficiary; that, after this was called to the defendant's attention, he still promised that, if the price were increased to a certain amount, a conveyance would be made; that the plaintiff thereupon procured an offer from a prospective purchaser for the larger sum; that the trustee, however, would not sell the property, and that the deposit was returned to the prospective purchaser. *Held,* that

(1) Requests for rulings relating to the powers and duties of the trustee properly were refused as immaterial;

(2) A finding was warranted that at no time did the defendant make performance by him dependent on the approval of the trustee: upon such a finding compensation was payable even if the defendant could not have conveyed the legal title;

(3) The contract between the plaintiff and the defendant was not within the provisions of G. L. c. 259, § 1 (4).

CONTRACT, with a declaration in two counts, the first count being upon an express contract to pay the plaintiffs a commis-

sion for procuring "a purchaser ready, willing and able to pay the sum of $112,500 for certain property . . . in the sale of which property the defendant was interested"; and the second count being upon an account annexed. Writ dated June 26, 1924.

In the Superior Court, the action was tried before *Keating*, J., upon the first count, the second being waived. Material evidence and requests for rulings refused by the judge are stated in the opinion. The jury found for the plaintiff in the sum of $3,288.38. The defendant moved for a new trial on the ground of newly discovered evidence. The motion was heard upon affidavits filed by both parties, and was denied. The judge then reported the action to this court for determination.

The case was submitted on briefs.

*H. W. Packer*, for the defendant.

*R. B. Coulter*, for the plaintiffs.

BRALEY, J. This is an action of contract to recover a broker's commission for negotiating a sale at the request of the defendant of certain real property in which she had an equitable interest. The jury returned a verdict for the plaintiffs, and, a motion by the defendant for a new trial on the ground of newly discovered evidence having been denied, the case was reported to this court subject to the following stipulations: If the trial judge was warranted in overruling the motion for a new trial, and in refusing the defendant's requests for rulings, judgment is to be entered on the verdict for the plaintiffs for $2,962.50 and interest from the date of the writ; "if the trial judge was not warranted in overruling the motion for a new trial there is to be a new trial; if the trial judge erred in refusing any of said requests for rulings, and if such refusal injuriously affected the substantial rights of the defendant there is to be a new trial."

The question whether a new trial should be granted on the affidavits filed by the defendant, when read with the plaintiffs' counter affidavit, and considered with the evidence at the trial, was discretionary with the trial judge. It does not appear that he was plainly wrong or abused his discretion in denying the motion, and no error of law is shown. *Powers*

v. *Bergman,* 210 Mass. 346. *Commonwealth* v. *Sacco,* 255 Mass. 369.

The remaining questions are whether the plaintiffs were entitled to go to the jury on the merits, and, if so, whether there was error in refusing the defendant's requests for rulings in so far as they were not given. The jury on all the evidence were warranted in finding, that the attention of the plaintiffs, a firm of real estate brokers engaged in selling real property on commission, having been called to the premises referred to in the record as the "Chestnut Hill Avenue property" consisting of two apartment houses, Charles C. Palmer, a member of the firm, had an interview with the defendant at his office. The defendant said that the property was for sale and that she was anxious to sell it. The income was approximately $20,000, and the assessed valuation to the best of her knowledge was $100,000, and that the lowest price was $110,000. The defendant then asked him to do all he could to procure a purchaser. The plaintiffs accordingly obtained from one Harry H. Spevack an offer of $110,000, who also gave a check for $1,000 which the plaintiffs had certified by the trust company on which it was drawn; the plaintiff, Charles C. Palmer, showed the check to the defendant, who did not accept it, and told her that he had a purchaser for $110,000 and asked her about "signing agreements." The defendant replied that her attorney, Mr. Allen, was away, and that she would sign no agreement until he returned. The defendant later told Palmer to bring the check to Mr. Packer of the firm of Allen, Abbot and Packer, counsellors at law, Mr. Allen being one of the trustees holding the property in trust under the will of P. Briggs Wadsworth, the defendant's father. The check was shown to Mr. Packer and he was informed by Palmer of what had been done in procuring a purchaser. Mr. Packer explained to Palmer that the defendant could not give a legal title to property in which she had no interest except as one of three beneficiaries, and that he could not understand why the defendant should engage Palmer to sell the property for $110,000 when a similar offer had previously been refused. Palmer then saw the defendant and told her that he had earned his commission. But she

said, that the trouble was with the price, and that if he could get the proposed purchaser to increase the price to $112,500 she would pay the commission. The plaintiffs thereupon had further negotiations with Spevack, who raised his offer to $112,500. The defendant, upon being informed by the plaintiffs of this offer, and asked to make arrangements for drawing the papers, said that she would have to wait for Mr. Allen's return. The plaintiffs informed Spevack of the situation, and Spevack, who had become impatient over the delay, telephoned the defendant. "She asked him if he was the man who was buying the property from her and he said that he was and that he had offered $112,500, and she told him to go to Mr. Allen's office and that they would draw the agreement the following day at eleven o'clock." The plaintiff, Charles C. Palmer and Spevack, went to Mr. Allen's office the next day but the defendant did not attend. Palmer had a talk with Mr. Allen, who refused to prepare the agreement, and said that the property was not for sale. The check was returned by Palmer to Spevack and all negotiations ended. The defendant after the meeting told Palmer in substance that she could do nothing more. There was evidence as to Spevack's financial resources, and it could be found that he was ready, able and willing to pay the defendant's price of $112,500. The defendant, called as a witness, did not remember her conversation with Spevack over the telephone, but admitted that he might have "told her he stood ready to go ahead and wanted the agreement signed at $112,500," and she also testified that she desired the property sold if it met with the approval of the trustees. The plaintiffs, as Charles C. Palmer testified, preferred to consummate the sale if possible for $112,500 rather than litigate their claim to a commission on the sale for $110,000.

The count on an account annexed was waived, and the court ruled that the plaintiffs could recover only on the first count. The plaintiffs' claim, therefore, rests on an implied contract to pay them a reasonable compensation or commission, the amount of which is not in dispute, if they found a purchaser able, ready and willing to pay $112,500, the price fixed by the defendant, and that, there having been evidence

that the plaintiffs had fully performed the contract in accordance with its terms, compensation had been earned.

The defendant's first request that on all the evidence the plaintiffs could not recover was rightly refused. *Altman* v. *Goodman,* 255 Mass. 41, 45. *Elliott* v. *Kazajian,* 255 Mass. 459, 461.

The eighth request that, "In matters of discretion, trustees are bound to exercise their own best judgment," and the eleventh request that "The proceeds of any sale of the trust property would be held by the trustees for investment and would not be subject to distribution among the beneficiaries as income," and the twelfth request, that "Any agreement for the sale of real estate to be enforceable must be in writing," could not have been given; they were inapplicable to the issue raised. The plaintiffs' contract was with the defendant and not with the trustees. The plaintiffs when the defendant began dealing with them did not know in whom the title to the property stood. The defendant, however, with knowledge of the plaintiffs' interview with Mr. Packer, had at her request, still promised that if the price were increased a conveyance would be made, and the jury on conflicting evidence could find that at no time did the defendant make performance by her dependent on the approval of the trustees. We are of opinion that on the record compensation was payable even if the defendant could not have conveyed the legal title. *Monks* v. *Parker,* 180 Mass. 246, 248. *Klayman* v. *Silberstein,* 252 Mass. 275, 278. The contract also was not within the statute of frauds, G. L. c. 259, § 1 (4). The plaintiffs did not agree to purchase, nor did they acquire any interest in the land. *Trowbridge* v. *Wetherbee,* 11 Allen, 361, 364.

The result is, that judgment for the plaintiffs is to be entered on the verdict with interest from the date of the writ, and the order denying the motion for a new trial is to stand.

*So ordered.*