ROBERT E. LAIDLAW *vs.* ANNA E. VOSE & another.

Dukes County. October 22, 1928. — January 4, 1929.

Present: CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Broker,* Commission. *Agency,* Double employment. *Practice, Civil,* Requests, rulings and instructions. *Evidence,* Presumptions and burden of proof.

At the trial of an action for a commission by a real estate broker against two women, the first of whom was the mother of the second, there was evidence that the defendants authorized the plaintiff to undertake to sell certain property at a price of $35,000 plus commission; that no terms other than price were then stated; that the plaintiff at once obtained a customer at $37,000 and received from him a check for $1,000 payable to the first defendant; that the customer signed a form of receipt, made out to be signed by that defendant, which called for a "warranty deed to be delivered within thirty days"; that the plaintiff at once by telephone gave notice of that fact to the defendant and she expressed surprise and commented on the disappointment it would be to another broker, who also had the property for sale, and objected to a delivery of a deed in thirty days, suggesting sixty days instead, and refused to sign the receipt for that reason, but took the check in part payment; that the plaintiff then saw the other defendant and related to her the conference with the first defendant and she approved the sale, the giving of the check to the other owner, and the sixty-day period; that the plaintiff then had formal agreements for sale prepared, but the first defendant's husband insisted that the commission be "split," and, on the plaintiff's refusal, declared the sale could not be made; that the next day the first defendant returned the check, unindorsed and uncashed, in a letter saying, "There has been quite a misunderstanding"; and that the customer was ready, willing and able to pay $37,000 in cash, to wait sixty days or any reasonable time for delivery of deeds, to take a quitclaim deed

if the defendants would not give a warranty deed, and to make all customary adjustments of taxes and insurance. There was a verdict for the plaintiff. *Held*, that

(1) The verdict for the plaintiff was warranted;

(2) A finding was warranted that the effort to revoke the plaintiff's authority came too late;

(3) It was no term of the employment that the broker should divide his commission with one who had nothing to do with his transaction or that a sale must be completed before any sum was due.

At the trial above described, the judge ruled as requested by the defendant, "If the jury shall find that . . . [the customer] never came to any agreement with the defendants or either of them as to the time for completion of the bargain, or whether a warranty or quitclaim deed was to be given, or other terms that were to govern the rights of the parties, then the verdict must be for the defendants," but added a modification, in substance, "when you find out what the terms were that the defendants insisted on — and I tell you that where nothing was said about any of the details [as to time for delivery and whether the form of the deed should be quitclaim or warranty], the law implies reasonable conduct on the part of the parties — then for the plaintiff to recover his commission . . . [the customer] must have been ready to carry out the contract according to the defendants' terms, reasonable conduct being implied as to those terms that were not expressly talked about." The defendants excepted to the modification of the instruction. *Held*, that

(1) The instructions given were sufficiently favorable to the defendants;

(2) The instruction in the form requested by the defendants did not accurately state the law applicable in a possible view of the evidence;

(3) An agreement in express words on all terms between buyer and sellers was not essential; the law would furnish the necessary terms left unexpressed;

(4) If the customer was ready, able and willing to meet the terms expressed by the owners and supplied by the law, then the conditions essential to recovery of a commission by the plaintiff were fulfilled.

Evidence, at the trial above described, that the customer accompanied the plaintiff on the visits which he made to secure authority to make sale of the premises, and that he had stated his wish to acquire the property before the plaintiff set out on his quest, and denials by both the plaintiff and the customer in their testimony that the customer had employed the plaintiff to purchase for him, or that he knew of the plaintiff's authority to sell until they returned to the plaintiff's office, made it proper for the judge to rule that there was no evidence of a double employment warranting the submission of such an issue to the jury.

CONTRACT by a real estate broker for a commission. Writ dated September 6, 1927.

In the Superior Court, the action was tried before *Lummus*,

J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $1,920.29. The defendants alleged exceptions.

*M. M. Johnson*, (*E. R. Sparrow* with him,) for the defendants.

*G. M. Poland*, (*F. H. Davis* with him,) for the plaintiff.

WAIT, J. The plaintiff, a real estate broker, sued in two counts to recover a commission. The first count alleged an employment "to sell certain premises" at Edgartown "for $35,000 net to the defendants"; that he "found a customer for said premises ready, willing and able to purchase at the price of $37,000"; and that the defendants owe him $1,850 as commission on said sale. The second count, upon an account annexed, claimed $1,850 as a commission at five per cent "for procuring customer . . . for sale of real estate at $37,000." At the trial it appeared that no completed sale took place. The jury found for the plaintiff. The defendants allege error in the refusal of the trial judge to direct verdicts for the defendants; in the refusal to give their sixth request for instructions without modification; in the modification made; and in the refusal to submit to the jury an issue of double employment.

The motions for direction of verdicts were denied properly. No question of pleading was raised. There was controverted evidence from which the jury could find as follows: The defendants authorized the plaintiff as a broker to undertake to sell the property at a price of $35,000 plus commission. No terms other than price were then stated. The plaintiff, within an hour, obtained a customer at $37,000. He received a check to the order of one of the defendants for $1,000 and a writing signed by his customer which read: "Deposit paid, received $1,000 on account of the sale of the Hedden property, warranty deed to be delivered within thirty days." He notified the payee by telephone of the sale and took the check to her. She expressed surprise, and commented on the disappointment it would be to another broker who also had the property for sale. She objected to delivery of a deed in thirty days, suggesting sixty days instead; and, for that reason, refused to sign the receipt for

the deposit, but she took the check in part payment. This bore in one corner the words "Deposit on Hedden property, North Water Street, balance $36,000." The plaintiff then saw the other defendant, and told her of the sale, of the giving of the check, and of the suggestion of sixty days for passing of papers. She approved the sale, the giving of the check to the other owner, who was her mother, because "she had full charge of the property," and the sixty-day period.

The plaintiff and the purchaser then went to a lawyer who prepared a written agreement of purchase and sale at $37,000, papers to pass in sixty days, which was signed by the purchaser. The plaintiff instructed that they be sent by mail to the defendants for signature. Within an hour or two the husband of the mother called on the plaintiff and asked what he proposed to do for the other broker. On learning that nothing was to be done, he insisted that the commission be "split," and, on plaintiff's refusal, declared the sale could not be made. The plaintiff replied that he was too late, that a sale had been made and his wife had received the deposit; but the husband said, "You haven't got the deed yet," and went away. Next morning the mail brought to the plaintiff a note from the mother enclosing the check, unindorsed and uncashed, and saying, "There has been quite a misunderstanding." The customer was ready, willing and able to pay $37,000 in cash, to wait sixty days or any reasonable time for delivery of deeds, to take a quitclaim if the defendants would not give a warranty deed, and to make. all customary adjustments of taxes and insurance. Here was sufficient evidence to. justify a verdict for the plaintiff, since it will support findings that the defendants authorized the plaintiff to list their property and offered to pay him a commission if he secured a customer ready, willing and able to purchase the property upon the terms understood between the sellers and the broker to be the terms of the sale, and that he procured such a customer. *Palmer* v. *Wadsworth*, 264 Mass. 18. The effort to revoke could have been found to be too late. See *Elliott* v. *Kazajian*, 255 Mass. 459, 461, 462.

It was no term of the employment that the broker should

divide his commission with one who had nothing to do with his transaction. The judge could not rule that the offer required that a sale must be completed before any sum was due. *Noyes* v. *Caldwell*, 216 Mass. 525; *Munroe* v. *Taylor*, 191 Mass. 483, and *Carpenter* v. *Blake*, 251 Mass. 47, are not in point here.

The defendants requested the judge to instruct the jury: "If the jury shall find that . . . [the customer] never came to any agreement with the defendants or either of them as to the time for completion of the bargain, or whether a warranty or quitclaim deed was to be given, or other terms that were to govern the rights of the parties, then the verdict must be for the defendants." He read this to the jury and added: "That is true, gentlemen, I give you that instruction, but I ought to say this about it, that if no express time was fixed in the talks as to when the deed was to be given, it was by implication of law in a reasonable time; and if . . . [the customer] was not able, ready and willing to pass the deed in a reasonable time, the plaintiff cannot recover a commission. On the other hand, if the time expressly talked of, and agreed by the defendants, was sixty days, then for the plaintiff to get a commission, . . . [the customer] must have been ready to pass title in the sixty days. In other words, . . . [the customer] must have been ready, in order for the plaintiff to recover, to put through the title within the time required by the defendants, whether it be sixty days or a reasonable time.

"Now as to the kind of deed that was to be given, the defendants apparently never agreed to give a warranty deed. That being so, the law would imply a mere quitclaim deed, and unless . . . [the customer] was ready to take a quitclaim deed with a good title, that is a quitclaim deed that would in fact pass a good title, then the plaintiff cannot recover a commission. But when you find out what the terms were that the defendants insisted on, — and I tell you that where nothing was said about any of the details, the law implies reasonable conduct on the part of the parties, — then for the plaintiff to recover his commission, . . . [the customer] must have been ready to carry out the contract

according to the defendants' terms, reasonable conduct being implied as to those terms that were not expressly talked about. And with that explanation I give this instruction that the defendants have requested."

This was sufficiently favorable for the defendants. The instruction requested did not accurately state the law applicable in a possible view of the evidence. The jury could find that, at their first interviews with the broker, the owners said nothing as to any term of the contemplated sale except the price and commission; that, when he reported his negotiations and stated the terms, no objection was made if the purchaser would agree to sixty days for delivery of the deed, as he did; that nothing was said as to the form of the deed, and that both defendants expressed satisfaction with sale and customer. There was no evidence that the property was subject to any mortgage so that an adjustment of principal or interest needed to be agreed upon. There were no such circumstances as appear in *Doten* v. *Chase*, 237 Mass. 218; *Elliott* v. *Kazajian, supra;* or *Flax* v. *Sovrensky*, 262 Mass. 60, to show that owners and broker understood that arrangements remained to be made between seller and buyer with regard to any terms of the trade. An agreement in express words on all terms between buyer and sellers was not essential. The law would furnish the necessary terms left unexpressed. The customer must be ready, willing and able to meet these terms, but if so willing, able and ready to meet the terms expressed by the owners and supplied by the law, then he fulfilled the conditions essential to recovery of a commission by the broker who obtained him.

There was evidence that the customer accompanied the plaintiff on the visits which he made to secure authority to make sale of the premises, and that he had stated his wish to acquire the property before the plaintiff set out on his quest. Both denied that he had employed the plaintiff to purchase for him, and that he knew of the latter's authority to sell until they returned to the latter's office. There was no other evidence of a double employment. The jury could have disbelieved the testimony, but disbelief alone would not be positive evidence to justify findings of employment

or knowledge. *D'Arcangelo* v. *Tartar*, 265 Mass. 350, 352.

The judge was right in ruling that here was no sufficient evidence for the jury that a double employment existed. It follows that the order must be

*Exceptions overruled.*