*Municipal Court for the South Boston District*

No. 378

*Northern District*

No. 4944

## GRETA DAHLGREN RULL
## d/b/a SPINNEY & KELLEY

v.

## EVA BRAZAUSKAS

(May 1, 1956)

*Brooks, J.* This is an action of contract in which plaintiff seeks to recover a broker's commission in the amount of $500 from defendant. The plaintiff's declaration is in three counts. Count 1 alleges, in substance, that defendant employed plaintiff, a real estate broker, to procure a sale of certain real property in South Boston on terms satisfactory to defendant and agreed to pay broker's commission. The count further alleges that plaintiff did procure a customer ready, willing and able to purchase the property on defendant's terms, but that defendant refused to pay the commission. Count 2 alleges, in substance, that defendant owes plaintiff $500 with interest for a broker's commission on the sale of real estate. Count 3 alleges, in substance, that defendant owes plaintiff $500 interest for services rendered by plaintiff. All three counts are for the same cause of action. Defendant answered in general denial, payment, and the Statute of Frauds.

The case was heard by (*Linehan, S. J.*)

Plaintiff testified that in May or June, 1954, she talked with defendant who told her that she wanted to sell her house and land on Ticknor St., South Boston, for $16,500. Plaintiff asked defendant if she

wanted plaintiff to try to sell the house and defendant inquired what the commission would be, to which plaintiff replied 5%.

On or about August 3, plaintiff's associate, one Larkin, brought Vincent A. Mastricola to the property and they were shown over it by defendant. The next day Larkin informed defendant that Mastricola had offered $15,000 for the property, which defendant refused.

On August 10, Larkin informed defendant that Mastricola had increased his offer to $15,500. Defendant refused to accept the offer but said she would accept an offer which, after payment of commission, would net defendant $15,500, provided the purchaser would agree to give defendant's daughter a three-year lease at $40 a month.

On or about August 16, Larkin informed defendant that Mastricola had agreed to pay $16,000 for the house, that plaintiff would accept $500 as a commission so that defendant would net $15,500. Defendant then told Larkin that she had bought a new oil tank which cost $335 to install and that that amount would have to be added to the purchase price.

The same day Larkin talked with Mastricola, after which he informed defendant that Mastricola would pay $16,335, that plaintiff would accept a commission of $500 and that the daughter would receive a three-year lease.

On August 17, Larkin secured a deposit from Mastricola in the amount of $500, also signatures of Mastricola and his wife on a purchase and sale agreement based on the terms agreed upon. The check and the agreement were shown to defendant who declined to accept either until her son approved the agreement.

On August 19, Larkin was informed by defendant's son that he had advised his mother not to sell the property on the ground that the three-year lease was not adequate for defendant's daughter.

Mastricola testified that on August 16, and for

several weeks thereafter he was ready, able and willing to purchase the property on the terms above specified.

Defendant's testimony, as reported, is confined to the following:

"The defendant testified that she talked with the plaintiff concerning the sale of the house on only one occasion and this during the first week in April, 1954. She told the plaintiff that she was contemplating painting, fixing and renovating the house but that if the house was sold before painting, fixing and renovating, she wanted $16,000 clear to herself and that the plaintiff could have everything over $16,000. The house was painted in the latter part of April at a cost of $1610. She also spent $415 for oil and $270 for miscellaneous repairs. She testified that she would not agree to the offer of $16,335 until she had taken up with her son, who is a priest, whether or not to sell and she then so advised the broker."

Plaintiff made the following requests for rulings:

(1)   If a broker who has been engaged by the owner of real estate, produces a person who is able, willing and ready to buy the real estate at the terms fixed by the owner, the broker is entitled to a commission regardless of whether or not the owner thereafter refuses to sell. *Palmer v. Wadsworth*, 264 Mass. 18.

(2)   The evidence warrants a finding that the defendant owned a parcel of real estate at 12 Ticknor Street, South Boston and engaged the plaintiff to procure a purchaser for the same.

(3)   The evidence warrants a finding that the defendant employed the plaintiff to procure a purchaser for the defendant's property at 12 Ticknor Street, South Boston, who would pay Sixteen Thousand Three Hundred

Thirty-Five Dollars ($16,335) for said property and would agree to give the defendant's daughter a three-year lease on the first floor apartment at Forty Dollars ($40) a month.

(4) The evidence warrants a finding that the defendant agreed to pay the plaintiff a commission of Five Hundred Dollars ($500) if the plaintiff produced a purchaser who was ready, able and willing to purchase the defendant's property at the terms fixed by the defendant.

(5) The evidence warrants a finding that the plaintiff produced a purchaser who was ready, able and willing to purchase the defendant's property at 12 Ticknor Street, South Boston at the terms fixed by the defendant.

(6) The evidence warrants a finding that the plaintiff by producing a purchaser for the defendant's property at the terms fixed by the defendant is entitled to a commission in the amount of Five Hundred Dollars ($500).

(7) A contract between the owner of real estate and a broker to procure a purchaser for the real estate is not within the statute of frauds, General Laws Chapter 259, Section 1 (4) and there is no requirement that the same be in writing in order to be enforcible. *Palmer v. Wadsworth*, 264 Mass. 18.

The court allowed plaintiff's request No. 1 with qualification that the court found, as a matter of fact, that no contract existed between the parties in that no terms for a commission had been mutually agreed upon by the parties.

The court allowed plaintiff's request No. 2 with the qualification that the court limited the meaning of the word "engaged" as used in the request to mean "listing the property for sale."

The court allowed plaintiff's request No. 7 and denied requests Nos. 3, 4, 5 and 6 and found for this defendant without memorandum.

We are asked to order a new trial on the ground that the court's disposition of plaintiff's requests for rulings, coupled with the failure to make any findings of fact, leave grave doubts as to the correctness of the court's rulings and disposition of the case.

Plaintiff's testimony would seem to substantiate the following facts. She undertook, at defendant's request, to procure a customer who would purchase defendant's property. A potential purchaser was procured. After conversations back and forth, which resulted in the customer increasing his offer at least twice, defendant in effect said that she would sell her property to the customer for $16,335 with the understanding that plaintiff's commission would be only $500 and that the customer would give defendant's daughter a three-year lease of the premises at $40 a month. Plaintiff secured a signed purchase and sale agreement to these terms from the customer, also a deposit of $500 and took them to defendant.

On plaintiff's testimony, she had procured a customer ready, willing and able to purchase the property on terms prescribed by defendant, had signed an agreement and put up a deposit, then the deal fell through because defendant's son "talked her out of it." Defendant's testimony is consistent with plaintiff's testimony that she talked once with defendant after which negotiations with defendant were carried on up to the middle of August by plaintiff's representative, Mr. Larkin. During that time substantial changes were suggested by defendant and accepted by plaintiff. Defendant's testimony does not negative the contention that she had listed the property for sale with the plaintiff and that the latter had procured a customer on defendant's terms before defendant's son "talked her out of it."

It is to be noted that defendant's reported testi-

mony, page 6 of the report, was that "She would not agree to the offer" until she had taken it up with her son. That is not equivalent to a statement that she had never agreed to the offer. It is consistent with plaintiff's testimony that at the last minute she imposed that condition. If so, plaintiff was entitled to a commission. *Casey v. Fritz Carlton Hotel Co.*, 254 Mass. 223. *Simon v. Lettiere*, 257 Mass. 563, 570. *Palmer v. Wadsworth*, 264 Mass. 18. *Barsky v. Hanson*, 311 Mass. 14, 16.

That is to say, there is serious doubt as to correctness of the judge's interpretation of the testimony. There is the further uncertainty caused by the judge's phraseology in dealing with plaintiff's first two requests for rulings. The first request was allowed "subject to the qualification that the court found as a matter of fact that no contract existed between the parties in that no terms for a commission had been mutually agreed upon by the parties."

It is not necessary, in order to entitle a broker to a commission, to prove a specific contract as to the amount of the commission. *Pope v. Beals*, 108 Mass. 561. In the absence of specific contract, the broker may recover on *quantum meruit. Henderson & Beal, Inc. v. Glen*, 329 Mass. 748, 752. It could be found that defendant impliedly agreed to pay plaintiff a commission. *Barsky v. Hanson*, supra. If, therefore, the court based its finding wholly or partially on the ground that there was no obligation to pay, it was prejudicial error.

In passing on plaintiff's second request, the court allowed it subject to the qualification that the meaning of "engaged" was limited to "listing the property for sale." The purpose of listing property with a broker is to enlist his services to procure a customer. While listing of property may not constitute employment of a broker, nevertheless, if the broker, subsequent to the listing, procures a customer ready, willing and able to meet the seller's terms, the broker

has earned his commission. *Elliott v. Kazanjian*, 255 Mass. 459. 461. If the court is intimating, in passing on the second request, that there was no obligation on defendant to pay a commission because there was only listing for sale, this is prejudicial error.

The denial of plaintiff's requests Nos. 3, 4, 5 and 6 was erroneous in view of the lack of findings of fact. There was plainly evidence of the facts stated in the requests. *Hetherington & Sons v. Wm. Firth Co.*, 210 Mass. 8, 18; *Bresnick v. Heath*, 292 Mass. 293, 298; *O'Leary v. Hayden*, 325 Mass. 525, 528.

For all these reasons, the finding is to be vacated and the case remanded for a new trial.

William A. Doherty, for the plaintiff.

Hale and Dorr, for the defendant.