FORBES MACGREGOR vs. HENRY C. LABUTE
(and a companion case).

Barnstable. March 9, 1982. — July 20, 1982.

Present: GRANT, GREANEY, & DREBEN, JJ.

*Frauds, Statute of. Contract*, With broker. *Practice, Civil*, Summary judgment. *Broker*, Commission.

The Statute of Frauds did not bar an action by a real estate broker against the owner of real estate for damages for the breach of an oral contract which provided that the owner would convey the land if the broker should produce a buyer meeting the owner's terms and that the buyer, rather than the defendant owner, was to pay the broker's commission. [205-208]

BILL IN EQUITY filed in the Superior Court on January 12, 1973.

CONTRACT. Writ in the Superior Court dated January 12, 1973.

The cases were heard by *Keating, J.*, on a motion to dismiss.

*Gerald W. Motejunas* (*William Tick* with him) for the plaintiff.

*David W. Pyne* for the defendant.

DREBEN, J. The primary issue on this appeal is whether the Statute of Frauds bars an action by a real estate broker against the owner of real estate for damages for the breach of an oral contract which provides that the buyer, rather than the defendant seller, is to pay the broker's commission. The promise which the defendant allegedly failed to honor was that he would consummate the transaction if the broker should produce a buyer meeting the defendant's terms. We hold that the statute is not a bar.

A judge of the Superior Court entered summary judgment for the defendant.[1] Drawing the inferences from the underlying facts contained in the materials "in the light most favorable" to the plaintiff, as we must on review of a summary judgment, *Hub Associates* v. *Goode*, 357 Mass. 449, 451 (1970), the plaintiff may be able to prove the following facts.[2] The plaintiff, upon learning that the defendant intended to sell the land, obtained his consent to list the property for sale. The terms of the listing were that the defendant was to receive $1,000,000, that he was not to be obligated to pay a commission, and that the buyer was to pay the commission. The defendant agreed that if the broker should find a purchaser meeting these terms, he would convey the land. There was evidence that the broker found such a purchaser, that the prospective buyer and the defendant orally agreed on the terms of sale, but that the seller refused to convey.

On the foregoing evidence, it could be found that the defendant's offer was accepted by the broker "by fulfilling its terms." *Elliott* v. *Kazajian*, 255 Mass. 459, 461 (1926). Thereafter, the defendant was no longer free to withdraw his offer. *Laidlaw* v. *Vose*, 265 Mass. 500, 503 (1929). If the broker can prove that the failure to complete the transaction between the buyer and the seller resulted from the "wrongful act or interference of the seller," the broker would in the usual circumstance be entitled to payment from the

---

[1] Although the judgment was described as a dismissal under Mass.R. Civ.P. 12(b)(6), 365 Mass. 755 (1974), both parties indicate that matters outside the complaints were considered by the judge. Accordingly, we treat the judgment as being under rule 56, 365 Mass. at 824. See rule 12(c), 365 Mass. at 756.

[2] A prior motion by the defendant for summary judgment had been denied by another judge who filed findings of fact and conclusions of law. The only evidence before the second judge which was not before the first judge was a deposition of the prospective buyer. We do not consider that deposition dispositive of any of the issues. Although we are not bound by the findings of the first judge because the evidence is documentary, we take our statement of facts in large part from the first judge's findings, as we consider them appropriate under the standard imposed by *Hub Associates* v. *Goode, supra*.

seller. *Tristram's Landing, Inc.* v. *Wait*, 367 Mass. 622, 629 (1975). *Kinchla* v. *Welsh*, 8 Mass. App. Ct. 367, 371 (1979).

Pointing out that this is not the usual brokerage contract, the defendant argues that he made no promise to pay any commission. To the contrary, he expressly provided that he was not to be liable for a commission and that one of the terms of the arrangement required the broker to look to the purchaser for his commission. This argument ignores the fact that there were two distinct oral contracts. One was between the defendant and the prospective buyer for the purchase and sale of the property, and the other was the defendant's agreement with the broker that if the latter should find a suitable purchaser, the seller would consummate the transaction, on the understanding that the plaintiff would receive his commission from the buyer. The present action is for breach of the second contract.

Apart from the question of the Statute of Frauds, the second contract, if proved,[3] would entitle the broker to recover damages from the seller for his refusing "without cause, to comply with his contract with [the] plaintiff[ ] to sell the land . . . with the distinct understanding that the plaintiff[ ] [was] to be compensated by the purchaser." *Atkinson* v. *Pack*, 114 N.C. 597, 605 (1894). *T. C. Henry & Sons* v. *Colorado Farm & Live Stock Co.*, 164 Fed. 986, 988 (8th Cir. 1908). *Kaercher* v. *Schee*, 189 Minn. 272, 274, 276-277 (1933). *Aronson* v. *Carobine*, 129 Misc. 800, 801-802 (N.Y. Mun. Ct. 1927). See *Eells Bros.* v. *Parsons*, 132 Iowa 543, 546 (1906); *Cavender* v. *Waddingham*, 2 Mo. App.

---

[3] We do not suggest that there is no dispute as to the terms of sale of the seller, and it may appear at trial that they were not met. We also note this action was brought and the breach, if any, occurred prior to the amendment of G. L. c. 112, § 87AAA, by St. 1973, c. 330, which added as a ground for disciplinary action by the board of registration of real estate brokers and salesmen, acceptance of a net listing, that is, "an agreement to sell real estate for a stated price which authorized the broker to keep as commission any amount of money received from the sale of said real estate in excess of the stated price." On the record before us, it is not apparent that the listing was such an agreement.

551, 554 (1876); *Danciger Oil & Ref. Co.* v. *Wayman*, 169 Okla. 534, 536-537 (1934); *Livermore* v. *Crane*, 26 Wash. 529, 529-530, 533 (1901), cases brought by a broker against a buyer for breach of a contract to purchase land where the seller was to pay the commission. See also *Chutkow* v. *Wagman Realty & Ins. Co.*, 80 Colo. 11, 13-14 (1926), and *Brawner* v. *Cumbie*, 264 S.W. 497, 499-500 (Tex. Civ. App. 1924), where a broker who had arranged an exchange of properties between two persons was held entitled to collect from the defendant as damages not only the commission which the defendant had agreed to pay but also the commission to which the other party had agreed but did not pay because of the defendant's wrongful action. Contrast *Allan Fox Co.* v. *Wohl*, 255 N.Y. 268, 273-274 (1931), where the defendant was held not liable for the commission of the other party on principles of *Hadley* v. *Baxendale*, 9 Ex. 341, 354-355, 156 Eng. Rep. 144, 150-151 (1854).

We turn next to the question of the Statute of Frauds. Had the oral arrangement been for the defendant to pay the commission, the contract would not be "within the statute of frauds. G. L. c. 259, § 1(4)." *Palmer* v. *Wadsworth*, 264 Mass. 18, 22 (1928). The court reached its conclusion because "[t]he plaintiffs did not agree to purchase, nor did they acquire any interest in the land." *Ibid.*

The difference between *Palmer* and the present case is that "the plaintiff's compensation or commission for [his] services, as . . . broker, [was to] be paid by the purchaser as part of the purchase price . . . ." *T. C. Henry & Sons* v. *Colorado Farm & Live Stock Co.*, 164 Fed. at 987. The defendant asks us to hold that the difference is crucial and that the Statute of Frauds relieves him of any liability for his wrongful refusal (if a contract be found) to complete the sale.

The authorities are not in accord on this question. Corbin suggests that the Statute of Frauds should not be applied, as there is here little danger of the mischief to which it is directed.[4] He states that in "practically all such cases, the

---

[4] We note that the contract with the broker does not clearly come within the literal language of G. L. c. 259, § 1, Fourth, which prohibits an

broker has been held to have a right to damages for the own-
er's breach. . . . The contract with the broker is not made
for the benefit of the hoped-for purchaser; it is regarded by
the parties as a contract for brokerage service, not for the
sale of land. Conceivably, a broker might commit perjury
in order to collect a commission . . . but successful consum-
mation of such a fraud would generally require participation
by the purchaser." 2 Corbin, Contracts § 399, at 364-365
(1950 & Supp. 1971).

While Corbin perhaps overstates the extent of the author-
ities, we are in accord and hold that the Statute of Frauds
does not bar the broker's action. See *Woolley* v. *Bishop*, 180
F.2d 188, 189, 192 (10th Cir. 1950) (contract viewed as one
of employment, buyer to pay commission). See also *Morgan*
v. *Whatley & Whatley*, 205 Ala. 170, 172 (1920) (broker
who had arranged for an exchange of properties could col-
lect damages including the fee due to the broker from the
other party for the breach of the defendant's promise to con-
vey, the Statute of Frauds being no defense to an action by a
broker for compensation as long as the purchaser takes no
advantage of the statute); *Vaughan* v. *McCarthy*, 59 Minn.
199, 200-201 (1894) (owner held liable for refusing to sell
under an oral agreement with a broker providing that brok-
er was to be paid all the seller should receive over a certain
price; "action is one for services rendered" and therefore the
Statute of Frauds "has no application"); *Bird* v. *Blackwell*,
135 Mo. App. 23, 27 (1909) (owner held liable for damages
for refusing to sell; Statute of Frauds not applicable to seller's
promise to broker where latter arranged for an exchange of
defendant's property with X, X to pay the commission);
*Tanner Associates* v. *Ciraldo*, 33 N.J. 51, 67 (1960) (Statute
of Frauds inapplicable to a contract between a prospective
purchaser of land and a broker, even though New Jersey has
a Statute of Frauds which, where the contract is between

---

action, unless the promise is in writing, "[u]pon a contract for the sale of
lands, tenements or hereditaments or of any interest in or concerning
them."

the seller and the broker, denies brokers the right to a commission unless authority from the owner to find a purchaser is in writing).  N.J. Stat. Ann. 25: 1-9 (West 1940).  Compare *Rich* v. *DeAvellar*, 2 Mass. App. Ct. 632, 634 (1974), involving a contract for services; other than those of a broker, where this court, while not allowing enforcement of seller's promise to convey, permitted the plaintiff to recover the fair value of the services performed.  *Contra*, Restatement (Second) of Contracts § 126, Illustration 6 (1981).[5] *DeLucca* v. *Flamingo Corp.*, 121 So.2d 803 (Fla. Dist. Ct. App. 1960), and *Stagg* v. *Lawton*, 133 Conn. 203 (1946), are the two cases cited in the Restatement to support Illustration 6 and do not allow recovery by the broker for the reason that the seller's promise to convey is within the Statute of Frauds.

The other issues raised by the parties are either without merit or are issues of fact to be resolved at trial.  Since, on the evidence most favorable to the plaintiff, the judgment for the defendant cannot be sustained, the judgment is reversed, and the case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[5] Illustration 6 reads as follows:  "A orally promises B that A will convey Blackacre to any purchaser procured by B, at a price stated 'net' of B's 5 per cent commission.  B procures an offer by C to buy on A's terms and to pay B's commission, but A refuses to convey.  A's promise to B is within the Statute of Frauds."