Dohoney, J.
The plaintiffs Arthur Decandia and Mary J. Decandia (hereinafter Decandia) purchased a house from the defendants Richard W. Barry and Jean A. Barry (hereinafter Barry.) The defendants Iris Cohen (hereinafter Cohen), Myrna Hammerling and Barbara C. Kolodkin (hereinafter Hammerling/ Kolodkin) and Donald O. Ruffer Inc. (hereinafter Ruffer) are real estate brokers involved in the transaction. Decandia brought suit alleging misrepresentation against Barry, violations of the G.L.M. Chapter 93A against Cohen, Hammerling/Kolodkin, and Ruffer and breach of contract against Ruffer. The Complaint could also be interpreted to allege misrepresentation against Cohen, Hammerling/Kolodkin, and Ruffer, but the fairest reading seems to merely allege misrepresentation as a part of the Chapter 93 A claim. Barry also crossclaimed against Cohen and Hammerling/Kolodkin for breach of contract and violations of Chapter 93A. Cohen and Hammerling/Kolodkin cross-claimed against Barry for breach of contract. Ruffer crossclaimed against Cohen and Hammerling/Kolodkin for negligence.
The basic issue in the case is the obligation of the defendant brokers and sellers of real estate to disclose the existence of ureaformaldehyde foam insulation. The sale took place prior to the enactment of G.L.M. Chapter 255, §121 which now sets forth a comprehensive scheme of notification.
The Trial Justice in essence found an obligation on the part of the brokers and found for Decandia against Cohen, Hammerling/Kolodkin, and Ruffer for $24,918.00 which represents double the cost of removal and attorneys fees of $6,015.70. He also found for the seller Barry against Cohen and Hammerling/ Kolodkin,for $3,017.38 which represents their counsel fees in defending the action. The Trial Justice found for the defendants in all other crossclaims except for the crossclaim of Hammerling/Kolodkin which does not appear to have been resolved. The Trial justice found for the defendant Barry.
The Report indicates that Barry was the owner of a residential dwelling in Pittsfield and had installed ureaformaldehyde foam insulation. Subsequently *93 they listed the property for sale with Hammerling/Kolodkin and told them there were “foamed sidewalls in the house.” Decandia began looking for a house and in November of 1979 contacted Ruffer and saw a picture of the Barry house. Decandia visited the house on their own, and Barry told them the house was well-insulated but did not disclose that the insulation was ureaformaldehyde foam. Decandia did see thick fiber glass cellular insulation in the attic and fiber glass on a sill in the basement. At a subsequent visit at which Ruffer and Cohen were present, no one disclosed the ureaformaldehyde insulation. Decandia asked a friend to inspect the house for them, and he did not discover the ureaformaldehyde foam. All questions were answered by Barry and Ruffer. No one asked about the insulation. In April of 1980, Decandia made a final visit and the parties agreed upon a price. No disclosure was ever made of the ureaformaldehyde insulation. Decandia took title and occupied the house. After learning of the ureaformaldehyde foam insulation, they had it removed for a cost of $12,459.00. On September 24,1982, a letter pursuant to G.L.M. Chapter 93A was sent to Ruffer and Hammerling/Kolodkin and responses were received.
PROCEDURE: Decandia’s brief is a comprehensive and scholarly treatment of the procedural posture of this case. In substance, Decandia alleges that all defendants have failed to properly perfect their appeals.
A. Appeal by Hammerling/Kolodkin and Cohen: These defendants filed three Requests for Rulings of Law. Request No. 1 recited, “Upon all the evidence the evidence warrants a finding for the defendants.” This was “Denied as contrary to facts found.” Decandia concedes that this action was “possibly erroneous” but asserts that this error was harmless since it is clear that the Court was not acting on the premise that there was no evidence upon which it could find for the defendants. Request No. 3 was that ‘The evidence requires a finding for the defendants.” This was “Denied as contrary to facts found.” Taken together these requests and the action thereon bring to issue whether the Report contains sufficient evidence to support the finding of the Trial Justice. We will not evaluate the evidence but “our function is confined to deciding whether, upon all the evidence with all rational inferences which might be drawn therefrom, the finding can be sustained.” See Ed Herrington, Inc. v. Clark, 1985 Mass. App. Dec. 18.
B. Appeal of Ruffer: Ruffer did not file any Requests for Rulings of Law and relies on the denial of its Motion for Directed Verdict and its Motion for Relief from Judgment as its appellate vehicle. The appeal of a denial of a Motion for Relief from Judgment can be accomplished by a Request for Report or Report.' See PERLIN & CONNORS, HANDBOOK OF CIVIL PROCEDURE IN THE MASSACHUSETTS DISTRICT COURTS, p. 113.
CLAIM AGAINST BARRY: Generally, the owner of dwelling has no obligation to reveal a defect in the condition of the dwelling. See Swinton v. Whitinsville Savings Bank, 311 Mass. 677 (1942). Also, the isolated sale of a private house is not trade or commerce such that an owner will be liable under G.L.M. Chapter 93A. See Lantner v. Carson, 374 Mass. 606 (1978). In our case the Trial Justice found for Barry presumably because they had no obligation to speak and made no misstatements or half-truths. In apparent recognition of an isolated sale, there was no allegation of violations of Chapter 93A against Barry.
CLAIM AGAINST HAMMERLING/KOLODKIN: The rules are different as applied to real estate brokers. Presumably under common law a broker has no greater obligation than his principal. However, brokers are engaged in trade and commerce and are thus subject to Chapter 93A. See MENDLER, *94 MASSACHUSETTS CONVEYANCERS’ HANDBOOK WITH FORMS, 3rd Ed., 1984 Section 4.4. This means that they must refrain from actions which are “unfair” or “deceptive”. G.L.M. Chapter 93A, §2. Although there are no statutory definitions of “unfair” or “deceptive,” courts are instructed to be guided by the regulations of the Attorney General. Our case particularly turns on a regulation of the Attorney General, specifically 940 CMR 3.16(2) which provides for a violation if “any person ... fails to disclose to the buyer ... any fact, the disclosure of which may have influenced the buyer ... not to enter into the transaction.” Thus, it appears that brokers may have an obligation to disclose defects about which their principals may remain silent.
One of the earliest cases involving non-disclosure in the sale of land is Heller v. Silverbranch Construction Corporation, 376 Mass. 621, 624 (1978). In that case a piece of land was sold to the plaintiff by the defendant after a representation by the president of the defendant that there was good drainage on the property. The plaintiff sued the defendant seller and broker after taking title and subsequently finding a foot of standing water when they relocated to the premises. The trial judge found for the plaintiffs against the defendant seller and for the defendant broker. While it is unclear whether the plaintiffs appealed the finding for the broker, the Court stated There was no evidence to suggest that Mrs. Glazer was aware of the drainage problem.... Nor was there any evidence that the brokers knew of the problem.”
One of the next cases involving the issue is Mongeau v. Boutelle, 10 Mass. App. Ct. 246 (1980). In Mongeau the broker misrepresented the acreage and failed to disclose the existence of a right of way over the property. He induced the plaintiff to sign an agreement binding the plaintiff to take title subject to all restrictions of record by telling him it was a standard form agreement. The plaintiff originally brought suit against the seller for fraud and obtained a judgment. The plaintiff then brought suit against the broker for fraud and violations of G.L.M. Chapter 93 A. The Court felt the allegations were sufficient and stated
The allegations, contrary to the defendant’s contention, are sufficient to state a claim under c. 93A, Sec. 2 and 9. An act may be “deceptive” under Sec. 2(a) if it “could reasonably be found to have caused a person to act differently from the way he would otherwise have acted.” Purity Supreme v. Attorney General, 380 Mass. 762, 777 (1980), quoting from Lowell Gas Co. v. Attorney Gen., 377 Mass. 37, 51 (1979). See 20 Code Mass. Reg., Title 940, Sec. 3.16(2) (1978). Failure to disclose a material fact which may influence the buyer is actionable under Sec. 9. Slaney v. Westwood Auto, Inc., 366 Mass. 688, 702-703 (1975)_
The Court did not engage in a lengthy discussion and did not address the issue of knowledge.
Another case which provides some insight is MacGillivary v. W. Dana Bartlett Ins. Agency of Lexington, Inc., 14 Mass. App. Ct. 52 (1982), further app. rev. den. 387 Mass. 1101. There the plaintiff ordered an insurance policy from the defendant insurance agency. The agency procured the policy from a company not authorized to do business in Massachusetts. This is a violation of G.L.M. 176, Section 160. The Court felt the conduct was negligent but not deceitful or consciously wrongful. The Court, however, reluctantly concluded that a negligent violation could constitute a violation of G.L.M., Chapter 93A.
The premier cases in this area are Nei v. Burley, 388 Mass. 307, 316 (1983) and Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 324 (1983). Both *95 cases stem from the sale of certain lots. In Burley the action was against the broker who listed the property but never spoke with the buyers. The broker was given a report by Boston Survey Consultants, the surveyors, which indicated “surface water”. The report was given to the buyers without explanation. The trial justice found that the broker had no knowledge that the lot would require additional fill for construction of the house and septic tank. The Court upheld the finding for the broker, saying
The judge found (and there is support in the evidence) that the broker had no knowledge that the lot would require additional fill to permit the construction of the house and septic tank. In this vital respect, the instant case is distinguishable from Mongeau v. Boutelle, 10 Mass. App. Ct. 246 (1980), in which the defendant broker misrepresented the size of the lot to the buyer, and failed to disclose that the property was encumbered by a right of way though he knew or should have known about it. In the instant case there is no affirmative misrepresentation and no showing that the broker knew or should have known about the problems of wetness, especially in the light of the fact that the test results were all accurate.
The Court also declined to impose liability on the surveyors. The Court noted that most cases of liability for failure to disclose involved defendants in legal relationships such as landlord and tenant or buyer and seller. The Court recognized that Mongeau did not require this, but said
The case of Mongeau v. Boutelle, however, is distinguishable from the instant case in at least two significant respects because there the broker was the active force in inducing the plaintiff to sign the agreement to purchase and by assuring the plaintiff that it was just a standard form. He never at anytime disclosed the fact that the plaintiff was binding himself to take the land subject to all restrictions of record. This active role of the broker required him to make a full diclosure and his failure to do so was unfair and deceptive.
The most recent discussion of this issue is in Sheehy v. Lipton Industries, Inc., 24 Mass. App. Ct. 188, 196 (1987), further app. rev. den. 400 Mass. 1103. The suit was against the owner and the broker concerning the sale of land which might contain hazardous materials. The Court cited Nei v. Burley, supra, and Lawton v. Dracousis, 14 Mass. App. Ct. 164 (1982) and went on to say, “These cases affirm the obvious principle that someone should not be liable for not disclosing what he does not know.”
Thus, for a broker to be liable for failure to disclose under 940 CMR 3.16 (2), the plaintiff must show that the broker (1) knew about the undisclosed fact, and (2) actively participated in the negotiations. Turning to the facts of our case, we must examine the Report to see if there is any evidence upon which the Trial Justice could have found that Kolodkin/’Hammerling know of the ureaformaldehyde foam. The evidence consists of two segments. First, the Report states that “At the time Barry engaged Evergreen Realty, Barry told Evergreen personnel that there were foamed sidewalls in the house.” Secondly, there was also evidence of fiber glass cellular insulation in the attic and fiber glass in the cellar.
The Trial Justice apparently equated the language of “foamed sidewalls” with ureaformaldehyde foam. There may have been evidence before him suggesting such a conclusion. However, there is no evidence in the Report that the terms are synonymous. Nor does there appear to be any established legal definition equating the terms. However, we do note from 780 CMR 2120.3 that “foam plastics” may still be used as a type of insulation in walls. From this we *96 conclude that foam type insulation is not limited to ureaformaldehyde foam and that the mention of “foamed sidewalls” does not provide a sufficient evidentiary basis to conclude that ureaformaldehyde foam is involved. Thus, there is insufficient evidence in the Report to show that Hammerling/Kolodkin knew or should have known of the ureaformaldehyde foam insulation.
III. CLAIM AGAINST IRIS COHEN:
The same reasoning applies to Iris Cohen. Additionally, the Report indicates that Barry told “Evergreen personnel” There is no evidence in the Report that the person told was Iris Cohen or that Iris Cohen was told by anyone.
IV. CLAIM AGAINST RUFFER:
A. CHAPTER 93A. The same reasoning applies to Ruffer. Also additionally, there is no evidence in the Report that Ruffer was ever told about the “foamed sidewalls” remark.
B. CONTRACT. The plaintiffs also allege a breach of contract against Ruffer. By statutory definition a broker can be any person who “negotiates ... or agrees to negotiate . .. the sale ... of any real estate.” See G.L.M. Chapter 112, Section 87PP. Thus, a broker may represent either the buyer or the seller. We are thus left to determine if there is any evidence in the Report from which the finding of a contractual relationship can be sustained.
From the Report we conclude that Evergreen listed the property and distributed the listing through some sort of multiple listing service to Ruffer. It further appears that Decandia went to the Ruffer office and learned of the house. It appears that Decandia initially visited the house without the aid of Ruffer personnel, but it is clear that by at least their third visit, that Ruffer personnel were present. There is no evidence in the Report about any contractual discussions between Ruffer and Decandia or payment by Decandia to Ruffer. We note that it is not the usual brokerage contract where the broker is to be the agent of the buyer and to look to him for his commission. See MacGregor v. Lapute. 14 Mass. App. Ct. 203 (1982). Thus, we conclude that the Report does not contain sufficient information to support a finding that Ruffer was the agent of Decandia
CROSSCLAIM OF RUFFER AGAINST COHEN AND HAMMERLING/ KOLODKIN:
Ruffer crossclaimed against Cohen and Hammerling/Kolodkin for negligence for failure to supply certain forms or information (not made part of the Report). Since Ruffer has no liability, he has suffered no damage and judgment should enter for the defendants.
CROSSCLAIM OF BARRY AGAINST COHEN AND HAMMERLING/KOLOD-KIN:
Barry raises the issue of breach of contract against Cohen for failure to disclose the ureaformaldehyde and for violations of G.L.M. Chapter 93A. Both of these claims are predicated on the Uniform Multiple Listing Contract which apparently recited that Barry had disclosed all information about the property and authorized this disclosure to any buyer. The Report does not contain the Uniform Multiple Listing Contract or excerpts or a summary but does recite that the contract was introduced in evidence. Because of the equivocal nature of the term “foamed sidewalls,” it might very well be that Barry may have failed to adequately disclose all information. In any event, because of the absence of the contract, there is insufficient evidence in the Report to determine the obligations of the respective parties, and thus we are unable to determine if there was a breach or an unfair or deceptive act.
Accordingly, (1) the judgment for Decandia against Cohen on Count II is *97 reversed and judgment is to enter for Cohen; (2) the judgment for Decandia against Hammerling/Kolodkin on Count III is reversed and judgment is to enter for Hammerling/Kolodkin; (3) the judgment for Decandia against Ruffer on Count IV is reversed and judgment is to enter for Ruffer; (4) the judgment for Decandia against Ruffer on Count V is reversed and judgment is to enter for Ruffer; (5) the judgment for Cohen and for Hammerling/Kolodkin on the Crossclaim of Ruffer is affirmed; ( 6) the judgment for Barry against Cohen on the Crossclaim is reversed and judgment is to enter for Cohen; (7) the judgment for Barry against Hammerling/Kolodkin on the Crossclaim is reversed and judgment is to enter for Hammerling/Kolodkin.